IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACK ALLEN FLIPPEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-0552-CV-W-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born July 1, 1958, and has a high school education. Plaintiff alleges disability beginning February 2, 2011, due to diabetes mellitus type 2, diabetic neuropathy, hypertension, chronic kidney disease stage II, renal insufficiency, a kidney cyst, low back pain, severe anxiety, depression with psychotic features, panic disorder with agoraphobia, and obesity.

A complete summary of the record is not necessary—the following will suffice for purposes of this appeal: The record shows that Plaintiff had diabetes, but he did not take any medication, did not test his blood sugar levels, and did not follow a diabetic diet, which was contrary to doctors' advice and instructions. R. 569, 595-96, 626, 645, 692. During one appointment, Plaintiff said "I'm going to eat what I want to eat, drink what I want to drink." R. 626.

On May 5, 2011, Nina Epperson, M.S., examined Plaintiff for a psychological evaluation. She noted that Plaintiff's thoughts were organized and goal directed, there

was no evidence of psychotic process, Plaintiff's speech was within normal limits, and Plaintiff was cooperative. R. 548. Ms. Epperson noted that Plaintiff displayed anxiety and was observed rocking back and forth in his chair, but he was alert and oriented and had good concentration. R. 548-49. She noted diagnoses of panic disorder, generalized anxiety disorder, and depressive disorder NOS, but a GAF score of 55 even without any treatment. R. 549.

On May 11, 2011, Deborah Doxee, PhD, completed a mental residual functional capacity assessment form. R. 564-65. Dr. Doxee found no significant limitations in fifteen of twenty categories and only found moderate limitations in the remaining five categories. R. 564-65. She found that Plaintiff could understand, remember, and carry out simple instructions; maintain adequate attendance; sustain an ordinary routine without special supervision; interact with peers and supervisors; and adapt to most unusual changes in a work setting. *Id.*

On July 18, 2011, Holly Chatain, Psy. D., completed a psychological evaluation of Plaintiff. R. 579-80. She diagnosed Plaintiff with panic disorder, dysthymic disorder, high blood pressure, and a GAF level of 45. R. 580. Plaintiff attended five outpatient sessions with Dr. Chatain between July 18, 2011 and May 11, 2013. R. 709. Dr. Chatain noted that Plaintiff refuses to seek medical attention. R. 709. She completed a medical source statement-mental on September 12, 2011. R. 592-93. She opined Plaintiff was extremely limited in all areas of social interaction, the ability to travel to unfamiliar places, the ability to complete a normal workday without interruption from psychologically based symptoms, the ability to perform activities within a schedule and maintain regular attendance, and the ability to work in coordination with or proximity to others without being distracted by them. R. 592-93.

Plaintiff filed two applications: an application for disability insurance benefits and an application for supplemental security income. R. 297-303, 306-07. Plaintiff's claims were denied initially. R. 163-65, 189-93. On July 27, 2012, following a hearing, an administrative law judge ("ALJ") found that Plaintiff was not under a disability. R. 166-84. On November 13, 2012, the Appeals Council granted Plaintiff's request for review, and remanded the case for a new hearing and decision.

The ALJ issued her decision on April 19, 2013. At step one of the five-step sequential proses, the ALJ determined Plaintiff had not engaged in substantial gainful activity since February 2, 2011, the alleged onset date. R. 70. At step two, she found Plaintiff had the following severe impairments: obesity, depressive disorder with psychotic features, generalized anxiety disorder, panic disorder, hypertension, and diabetes mellitus with peripheral neuropathy. R. 70. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 71. At step four and five, she concluded Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR 83-10 in that he can occasionally lift 20 pounds and frequently lift 10 pounds, stand and walk for up to 6 hours, and sit up to 6 hours in an 8-hour day. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds, and he can occasionally stoop but never kneel, crouch, or crawl; he should avoid all exposure to irritants, extreme heat and extreme cold, and humidity; he can only perform simple, repetitive, and routine tasks with no public interaction, only occasional interaction with supervisors, and he can work around coworkers, but may only occasionally interact with coworkers. R. 73

R. 73. Next, the ALJ found based on the vocational expert's testimony, that Plaintiff was unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 78. Finally, the ALJ concluded Plaintiff was not disabled. R. 79.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

3

## III. DISCUSSION

### A. Initial Arguments

First, Plaintiff contends the ALJ erred as a matter of law in holding him to a higher standard of proof than required by Defendant's regulations and rulings. In her decision, the ALJ stated the RFC was supported by a "preponderance of the objective and subjective evidence." R. 78. On review, a district court upholds the denial of benefits if the ALJ's decision is supported by "substantial evidence in the record as a whole." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). In other words, this Court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence in the record as a whole. However, this is not the standard employed by the initial finder of fact, which is the ALJ. The ALJ must be convinced of the truth of the propositions presented and she applies the lowest standard applicable to initial fact finders—namely, the preponderance of the evidence. In this case, the ALJ properly made factual findings that she found were supported by a preponderance of the evidence. Accordingly, there is no basis for reversal.

Next, Plaintiff argues the ALJ denied him a full and fair hearing because Plaintiff was unrepresented at his hearing and the ALJ failed to: (1) explain why vocational expert testimony was necessary; (2) qualify the vocational expert and offer Plaintiff the opportunity to object to the vocational expert's testimony. Plaintiff argues that the ALJ did not follow basic hearing procedures as required by the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), which is a guideline for internal use at the Social Security's Office of Disability Adjudication and Review.

The Eighth Circuit has not specifically ruled on the issue of whether HALLEX has the force and effect of law, but most other courts have held that it does not. *See Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual."); *see also Davenport v. Astrue*, 417 Fed. Appx. 544 (7th Cir. 2011); *Power v. Barnhart*, 292 F.3d 781, 785-86 (D.C. Cir. 2002); *DiChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). *But see Shave v. Apfel*, 238 F.3d 592, 596-97 (5th Cir. 2011).

Even if HALLEX had the force and effect of law, the ALJ's failure to following hearing procedures was harmless error. Plaintiff does not allege he was prejudiced as a result of the ALJ's failure to explain why expert testimony was necessary. Further, Plaintiff does not offer any explanation of the testimony that might have been elicited if he had questioned the vocational expert, nor does he contend that the vocational expert was unqualified. For these reasons, the Court rejects Plaintiff's argument that remand is necessary for failure to follow HALLEX procedures.

## B. The ALJ Properly Assessed Plaintiff's Credibility

Next, Plaintiff takes issue with the ALJ's finding that Plaintiff failed to seek treatment and take prescribed medication, and labeled him as "noncompliant." Plaintiff argues the ALJ failed to inquire as to the circumstances surrounding the failure to follow a prescribed course of treatment and thus contends the ALJ's decision is unsupported by the substantial evidence in the record as a whole. The Court disagrees and finds that there is substantial evidence in the record as a whole to support the ALJ's finding.

The ALJ noted that Plaintiff did not take medication or follow medical advice. R. 75. For example, Plaintiff was diagnosed with diabetes and high blood pressure but did not take any medication, did not test his blood sugar levels, and did not follow a diabetic diet. R. 569. 595-96, 626, 645, 692. During one appointment, Plaintiff said "I'm going to eat what I want to eat, drink what I want to drink." R. 595.

Plaintiff infers that his noncompliance was a result of his severe mental impairments and cites to *Pates-Fires*, 564 F.3d 935 (8th Cir. 2009), for support. In *Pates-Fire*, the claimant did not comply with treatment and her doctors believed her schizophrenia prevented her from understanding the importance of her medications. This case is unlike *Pates-Fire* because although Plaintiff refused to comply with medication, his doctor specifically noted that he was competent to make his own decision about his medical care. R. 692.

Next, Plaintiff contends he could not afford his medications and should not have been "penalized" for being "poor." First, Plaintiff's argument that he could not afford his medications is not supported by the record. Further, the record shows that Plaintiff specifically requested anxiety medications but refused his doctor's instructions

5

regarding hypertension and diabetes medications. This does not show that Plaintiff could not afford his medications; rather, it shows that he wanted different medications. Finally, Plaintiff's argument that he could not afford medications also does not explain why he refused to follow his diabetic diet.

Furthermore, although Plaintiff's noncompliance was a major factor in assessing Plaintiff's credibility, it was not the only factor the ALJ considered. In evaluating Plaintiff's subjective complaints, the ALJ considered the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Plaintiff's daily activities were properly taken into consideration. R. 76. Plaintiff has no problems with personal care activities and he plays with and cares for a pet, plays video games, and drives. R. 410-17, 580. Plaintiff shops, and is able to pay bills, handle a savings account, count changes, and use a checkbook/money orders. R. 413. He socializes with friends on a weekly basis, depending on the weather. R. 150. "'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). The ALJ also thoroughly reviewed the objective and diagnostic evidence and found that they did not support Plaintiff's allegations. R. 74.

Under the facts of this case, the Court cannot conclude that the ALJ improperly weighed Plaintiff's credibility. Although it may be that any one of these factors—including Plaintiff's noncompliance—alone would be insufficient to justify the ALJ's findings, collectively they serve as substantial evidence supporting the ALJ's decision.

C. The ALJ Properly Weighed the Medical Source Opinions

Next, Plaintiff argues the ALJ's RFC is unsupported by the substantial evidence in the record as a whole. Specifically, Plaintiff takes issue with the weight assigned to various medical opinions.

Social Security Ruling ("SSR") 06-3p, 71 Fed. Reg. 45,593 (Aug. 9, 2006) distinguishes between "acceptable medical sources" and "other sources." "Acceptable medical sources" include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. Only "acceptable medical sources" can be considered treating sources. 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007).

"Other sources" are divided into two groups: "medical sources" and "non-medical sources." "Medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, therapists, and other sources. SSR 06-3p "directs the SSA's adjudicators to give weight to opinions from medical sources who are not 'acceptable medical sources.'" *Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007).

"In general, according to the ruling, the factors for considering opinion evidence include: how long the source has known and how frequently the sources has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion." *Sloan*, 499 F.3d at 889 (citing SSR 06-3p).

The Court will now consider the weight the ALJ gave to the various medical opinions to which Plaintiff takes issue. First, Plaintiff argues the ALJ improperly applied "significant" weight to Ms. Epperson's examination findings. Ms. Epperson is an "other medical source" who saw Plaintiff once. The ALJ found that her findings were "well-supported by a thorough mental status examination . . . ." R. 78.

Ms. Epperson's examination findings contained a detailed report regarding Plaintiff's clinical behavior. R. 546-49. She noted that Plaintiff's thoughts were organized and goal directed; no evidence of psychotic process; his speech was within normal limits, he was cooperative. R. 548. Ms. Epperson noted that Plaintiff displayed anxiety and was observed rocking back and forth in his chair, but he was alert and oriented and had good concentration. R. 548-49. She noted diagnoses of panic disorder, generalized anxiety disorder, and depressive disorder NOS, but a GAF score of 55 even without any treatment. R. 549. The Court agrees that Ms. Epperson's findings were well supported by a thorough examination as indicated from her notes. Accordingly, the Court concludes there is substantial evidence in the record to support this finding.

Next, Plaintiff takes issue with Dr. Doxee's opinion, to which the ALJ applied "significant" weight. The ALJ noted that Dr. Doxee's opinion was supported by a review of the record and was consistent with Ms. Epperson's findings. R. 78. The Court finds

7

there is substantial evidence in the record to support this decision. Dr. Doxee reviewed the medical record and found no evidence of marked functional limitation as a result of mental impairment. The ALJ pointed out that Dr. Doxee found no significant limitations in 15 of 20 categories and only found moderate limitations in the remaining 5 categories. R. 564-65. Dr. Doxee found that Plaintiff could understand, remember, and carry out simple instructions; maintain adequate attendance; sustain an ordinary routine without special supervision; interact with peers and supervisors; and adapt to most unusual changes in a work setting. The ALJ found that Dr. Doxee's opinion was similar to and supported by Ms. Epperson's opinion. The Court agrees and finds that the ALJ properly weighed Dr. Doxee's opinion.

Finally, Plaintiff argues the ALJ improperly gave little weight to the opinion of Dr. Chatain, a treating source. This argument is without merit. "While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that it 'does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995)). Accordingly, a treating physician's opinion can be discounted where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). The ALJ must give "good reasons" for the particular weight given to a treating physician's evaluation. 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ gave good reasons for giving little weight to Dr. Chatain's opinion. Frist, the ALJ noted that Dr. Chatain's assessment was based on minimal treatment of Plaintiff—five outpatient session over a nearly two-year period. The ALJ also noted that Dr. Chatain's opinion consisted of checkmarks without explanations. Finally, the ALJ considered the fact that Dr. Chatain's opinion was inconsistent with other evidence in the record—namely, Dr. Doxee's opinion and Ms. Epperson's examination findings. The Court finds there is substantial evidence in the record to support the ALJ's decision to apply little weight to Dr. Chatain's opinion.

In sum, Plaintiff takes issue with the ALJ assigning more weight to medical sources who were not "acceptable medical sources"—Ms. Epperson and Dr. Doxee— than the opinion of an "acceptable medical source"—Dr. Chatain. It is important to note

that SSR 06-3p provides that after applying the factors for weighing opinion evidence, and depending on the particular facts in a case "opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." The ruling explains that it may be appropriate to give more weight to a medical source that is not an "acceptable medical source" if she has provided a better explanation of her opinion, or has provided better supporting evidence. SSR 06-3p. Here, it was appropriate for the ALJ to assign more weight to the medical sources that were not "acceptable medical sources" because Ms. Epperson's findings contained a detailed report and Dr. Doxee's opinion was supported by and similar to Ms. Epperson's findings. The ALJ properly found that they provided better supporting evidence and a better explanation for their opinions. The ALJ applied the appropriate factors in weighing each opinion and the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole.

D. Step Five

Finally, Plaintiff contends the ALJ should have considered application of the medical-vocational guidelines in conjunction with Plaintiff's borderline age situation and found Plaintiff disabled. The medical-vocational guidelines set out three age categories: (1) a younger person (under age 50); (2) a person closely approaching advanced age (ages 50-54); and (3) a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). However, the Commissioner shall avoid "mechanical application" of the guidelines when a claimant will be in a later age category in "a few days or a few months." *See* 20 C.F.R. §§ 404.1563(b) and 416.963(b). Nevertheless, an ALJ need not explain the use of a claimant's chronological age if the claimant does not show additional vocational adversities justifying the use of the higher age, even when the time period is only a few days. *See Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). Examples of vocational adversities include: no past relevant work; history of work experience in an unskilled job in one isolated industry or work setting; and having a marginal ability to communicate in English. *See Phillips*, 671 F.3d at 702; Application of the Medical-Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, *Hearings, Appeals, and Litigation Law Manual*

(HALLEX) II–5–3–2, *available at http://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html.*

In this case, Plaintiff was born July 1, 1958 and was less than three months from his 55th birthday at the time of the ALJ's decision on April 5, 2012. The ALJ placed Plaintiff in the "closely approaching advanced age" category. The ALJ did not discuss Plaintiff's borderline age situation; however, this was not error. Plaintiff did not present any additional adversities that would place him in the "advanced age" category. Plaintiff argues he had additional impairments, but merely recites the RFC—Plaintiff argues he can only occasionally stoop and climb ramps and stairs; never climb ladders, ropes, or scaffolds; void exposure to irritants, extreme heat, extreme cold, and humidity; can perform only simple; and other social limitations. These are not considered vocational adversities to which would require an ALJ to discuss a claimant's borderline age situation. The Court finds it was proper for the ALJ to not discuss Plaintiff's borderline age situation since Plaintiff did not have any additional vocational adversities.

Plaintiff also argues that two doctors opined that Plaintiff was disabled and thus the ALJ should have also found him disabled. A medical source opinion that a claimant is "disabled" involves an issue that is reserved for the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). Accordingly, the Court rejects Plaintiff's argument.

IV. CONCLUSION

There is substantial evidence in the record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: April 28, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT